UNITED STATES OF AMERICA, )
*ex rel.* DARLA LANE, )
THE STATE OF TENNESSEE, )
*ex rel.* DARLA LANE )
  )
    *Plaintiffs/Relators*, )
  )
v. )    Case No. 4:07-cv-4
  )
MUFREESBORO DERMATOLOGY )    Judge Mattice
CLINIC, PLC and MICHAEL W. BELL, )
M.D., )
  )
    *Defendants*. )

## MEMORANDUM AND ORDER

Presently before the Court are Defendants' Motion to Dismiss [Court Doc. 67], Plaintiff/Relator's Motion for Leave to File First Amended Complaint [Court Doc. 74], and Defendants' Motion to Strike [Court Doc. 75].

For the reasons explained below, Defendants' Motion to Dismiss [Court Doc. 67] will be **DENIED**, Plaintiff's Motion for Leave to File First Amended Complaint [Court Doc. 74] will be **GRANTED**, and Defendants' Motion to Strike [Court Doc. 75] will be **DENIED AS MOOT**.

## I.    FACTS

Plaintiff/Relator ("Plaintiff") filed her *qui tam* Complaint against Defendants Murfreesboro Dermatology Clinic (the "Clinic") and Michael Bell, M.D. ("Bell") on January 24, 2007. (Court Doc. 1, Compl.) Pursuant to the applicable statutory provision, 31 U.S.C. § 3730, Plaintiff filed the Complaint on behalf of herself, the United States, and the State of Tennessee. The Complaint was filed under seal. *See* 31 U.S.C. § 3730(b)(2).

Plaintiff's Complaint asserted that Defendant Bell and Defendant Clinic engaged in four false billing patterns that resulted in the submission of fraudulent claims to Medicare and TennCare in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, and the Tennessee Medicaid False Claims Act ("TMFCA"), Tenn. Code Ann. §§ 71-5-181 through 71-5-185d. (Compl. ¶¶ 11-24.) The first allegedly false billing pattern involved submitting all specimens removed from patients for pathology testing, regardless of whether a test was necessary to investigate skin conditions. (*Id.* ¶¶ 11-14.) The second pattern concerned designating all patients receiving cosmetic procedures as having an "irritated" condition to circumvent the Medicare and TennCare restrictions on payment for purely cosmetic procedures. (*Id.* ¶¶ 15-18.) The third pattern allegedly involved billing each contact Defendant Bell had with a patient, regardless of duration, under a billing code that is intended only for longer doctor-patient interactions. (*Id.* ¶¶ 19-20.) The fourth and final pattern concerned designating a "Modifier -25" adjustment to each claim for a procedure, when the adjustment was only intended to be added to a claim where the procedure and a completely separate patient evaluation occurred on the same day. (*Id.* ¶¶ 21-24.)

Plaintiff's claims were based on the assertion that all of these patterns were followed indiscriminately for every patient who satisfied the particular circumstances. Because Medicare and TennCare require physicians to sign a certification for each claim indicating that they have complied with the applicable program laws, Plaintiff contended that Defendant Bell's certification for every single claim fitting each pattern's circumstances rendered all such claims fraudulent due to false certifications. (*Id.* ¶¶ 7-10, 13-14, 16-18, 20, 22-24.) Based on these four allegedly false billing patterns and the false certifications

for the bills submitted under each pattern, Plaintiff asserted ten claims under the FCA and ten claims under the TMFCA. (*Id.* ¶¶ 25-124.)

The United States elected not to intervene in the action on December 30, 2009. (Court Doc. 57.) At that time, the Court ordered that the Complaint be unsealed and served upon the Defendants, along with the United State's Notice of Election to Decline Intervention. (Court Doc. 58.) Defendants waived service on February 24, 2010 and filed the Motion to Dismiss on March 30, 2010. (Court Docs. 65, 66 & 67.)

Plaintiff responded to the Motion to Dismiss on April 19, 2010 and filed an affidavit contemporaneously with her Response. (Court Docs. 72 & 73.) Subsequently, Plaintiff filed a Motion for Leave to File First Amended Complaint on April 23, 2010. (Court Doc. 74.) Because Plaintiff's affidavit included facts not set forth in her Complaint, Defendants moved to strike the affidavit from consideration of the Motion to Dismiss. (Court Doc. 75.) All three motions are presently before the Court.

## II. STANDARDS OF REVIEW

### A. Failure to State a Fraud Claim With Particularity – Rule 12(b)(6) and Rule 9(b)

Defendants generally assert their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and, more specifically, pursuant to Federal Rule of Civil Procedure 9(b). Rule 12(b)(6) provides an affirmative defense for a party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This defense arises in the context of a motion to dismiss, where the movant challenges the sufficiency of claims set forth in a complaint. In *Ashcroft v. Iqbal*, the Supreme Court of the United States expanded on its earlier holding in *Bell Atl. Corp. v. Twombly* by stating that "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court clarified this statement by outlining the two "working principles" governing a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Instead, a court considering a motion to dismiss should only accept that all factual allegations are true. Accordingly, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

The second principle outlined in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). The reviewing court must determine not whether the plaintiff will ultimately prevail but whether there is "more than the mere possibility of misconduct," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Therefore, to survive a motion to dismiss under 12(b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 9(b) governs the content of pleadings which assert fraud. The rule reads, in relevant part, "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The United States Court of Appeals for the Sixth Circuit has held that Rule 9(b) must be considered along with the requirements of Rule 8, which calls for "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (stating that "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony."). The purpose of the rule is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels*, 848 F.2d at 679. Accordingly, the Sixth Circuit has provided guidance for courts analyzing complaints under the 9(b) standard; the pleading must outline "the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud." *Id.*

Plaintiff asserts claims under the FCA and the TMFCA. The Sixth Circuit has determined that claims under the FCA must comply with the requirements of Fed. R. Civ. P. 9(b) and must be pled with particularity. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).

### B.    Amendment of the Complaint - Rule 15(a)

Under Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave [to amend] when justice so requires." "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

[and] futility of amendment" are among the reasons that a Court may deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Delay alone is not a sufficient reason to deny leave to amend. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). Ordinarily, there must be some "significant showing of prejudice to the opponent" before leave to amend will be denied. *Id.*

## III.  ANALYSIS

### A.  Defendants' Motion to Dismiss

Defendants assert that Plaintiff's Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) because it does not meet the fraud pleading requirement set forth in Rule 9(b). (Court Doc. 68, Def.s' Mem. in Supp. of Mot. to Dismiss 1-2.) Specifically, Defendants contend that Plaintiff's Complaint is deficient because it does not plead the specifics of any one of the allegedly false claims submitted to Medicare, TennCare/Medicaid, or other government agencies. (*Id.*) Because Plaintiff generally asserts a fraudulent scheme without pointing to specific claims, does not identify the specific time during which these allegedly fraudulent claims were submitted, does not identify any individuals who were involved in the false submissions, does not describe the documents used, and does not set forth Plaintiff's basis of personal knowledge regarding these false claims, Defendants claim that her Complaint must be dismissed with prejudice. (*Id.* at 6-13.)

Plaintiff responds by stating that she has personal knowledge of the false billing patterns by virtue of her employment as a billing specialist at Defendant Clinic for four years, from September 2002 to March 2006. (Court Doc. 72, Pl.'s Resp. at 2, 4.) Plaintiff

asserts that she and her co-workers personally implemented the billing practices described by submitting actual claims to Medicare, TennCare, and other government agencies. (*Id.*) Plaintiff claims that Defendant Bell's practice of certifying that each claim was made in good faith and based on his professional judgment of medically necessary treatment was fraudulent because several of the practices were implemented across-the-board for every such procedure–meaning that although it *may* have been medically indicated for a handful of patients, it was certainly not medically indicated for *all* patients–therefore, Defendant Bell's certification for every patient fitting those circumstances was fraudulent. (*Id.* at 2-4.) In regards to specifics, Plaintiff asserts that she has sufficiently pled the content, time, place, and nature of fraudulent claims, but cannot provide detail as to specific claims because all of the information is under Defendant Bell's control and she is no longer employed in that position. (*Id.* at 4, 12.) Furthermore, even if Plaintiff had access to the information, disclosure of information about individual patients would potentially violate the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id.* at 13.) Rather, Plaintiff asserts that Defendants can easily access the referenced claims through the Clinic's billing software. (*Id.* at 12-14.)

Defendants' Reply does not address Plaintiff's contention that disclosure of information relating to specific claims would violate HIPAA. Defendants instead focus on Plaintiff's suggestion that Defendants can access records to find the claims Plaintiff references in her Complaint. Defendants claim that Plaintiff's Response establishes that she does not have sufficient facts to support her claims; instead, Defendants assert, Plaintiff is on a "fishing expedition" whereby Defendants will be burdened to discover

evidence that might assist Plaintiff in supporting her case against them. (Court Doc. 77, Def.s' Reply at 1-2.) Defendants state that Plaintiff's suggested reports "will not prove falsity" and Plaintiff wants the Court to force Defendants to go on an "oceanic fishing expedition" that would result in an extraordinary burden on them. (*Id.* at 3-4.)

To first assess Plaintiff's Complaint in general terms, the elements of a false claim under the FCA, 31 U.S.C. § 3729, are "(1) a person presents, or causes to be presented, a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the person's acts are undertaken 'knowingly,' i.e., with actual knowledge of the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim."[1] *United States* ex rel. *Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("*Bledsoe II*")).

Plaintiff concedes in her Response to Defendants' Motion to Dismiss that Counts 1, 2, 6, 7, 11, 12, 16, and 17–relating to the first false billing pattern of submitting all skin materials for pathology testing and the third alleged pattern of using a billing code for more extensive doctor-patient interaction for every patient contact–can be dismissed based on Rule 9(b) particularity grounds. (Pl.'s Resp. at 4 n.9.) At issue, then, is Plaintiff's Complaint in regards to only two allegedly fraudulent billing patterns–the practice of designating all patients receiving cosmetic procedures as having an "irritated" condition so that purely cosmetic procedures can be billed to Medicare and TennCare, and the practice of assigning each procedure a "Modifier -25" designation to allow for additional billing for

---

[1] For the purposes of this Motion, the Court credits Defendants' contention that an inquiry under the TMFCA is substantially the same; therefore, the FCA analysis also applies to Plaintiff's claims under the TMFCA. *See In re Knox County, Tennessee* ex rel. *Envtl. Termite & Pest Control, Inc.*, No. E2007-02827-COA-R3-CV, 2009 WL 2144478, at * 4 (Tenn. Ct. App. July 20, 2009).

both a procedure and an evaluation which was completely separate from the evaluation normally incident to the procedure, even if no such evaluation occurred.

Plaintiff's Complaint asserts all of the necessary elements for FCA claims based on these two schemes. First, as a billing specialist for Defendants, Plaintiff had personal knowledge that claims were submitted by Defendants to Medicare and TennCare for payment. Plaintiff has alleged that a significant number of these claims were false by pointing to two patterns–one by which Defendants circumvented the restrictions on reimbursement for cosmetic procedures by designating the patient's condition as "irritated," and one by which procedures were billed as involving a totally separate patient evaluation regardless of the occurrence of such an evaluation. Plaintiff's assertion is that the submission of all claims where patients were designated as having an "irritated" condition, and all claims marked with a "Modifier -25" to indicate a separate evaluation were false because Defendants certified each of the claims without assessing whether the additional billing was appropriate or the cosmetic procedure was medically necessary. The Court accepts all facts as true for the purposes of this Motion, so Plaintiff has satisfied the second element. Finally, Plaintiff has alleged that Defendants ordered these patterns to be followed with every patient under the particular circumstances and certified that all claims were valid. Accepting this as true, Defendants acted knowingly or with reckless disregard for the truth of each claim.

Although the Court finds that Plaintiff has established all the elements of an FCA claim, the Court notes that Defendants assert that the Complaint is deficient pursuant to Rule 9(b) particularity because she does not plead the specifics of any false claim. The Sixth Circuit has made it clear that "[s]o long as a relator pleads sufficient detail–in terms

of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud–to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States* ex rel. *SNAPP, Inc. v. Ford Motor Company*, 532 F.3d 496, 504 (6th Cir. 2008) (citing *Bledsoe II*, 501 F.3d at 506). In *Bledsoe II*, the Sixth Circuit further held that "pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)." *Bledsoe II*, 501 F.3d at 504. The *Bledsoe II* court also stated, however, that:

> We do not intend to foreclose the possibility of a court relaxing this rule in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist, and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator.

*Id.* at 504 n.12. (citing *Hill v. Morehouse Medical Assoc., Inc.*, No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003)). The Court finds that Plaintiff's allegations fall more squarely into the situation that the Sixth Circuit acknowledged, but did not reach, in *Bledsoe II*. *Bledsoe II* analyzed how to approach fraudulent schemes in depth, remarking that an extremely generalized allegation of a scheme–such as "the hospital submits false claims to Medicare"–would be much too broad because it would not give the defendants notice of the conduct charged and could be more of a fishing expedition. *Id.* at 510. In this case, Plaintiff has pled two separate false billing patterns and, as compared to the fraudulent schemes asserted in *Bledsoe II*, Plaintiff's schemes are alleged with greater

particularity.[2]

Plaintiff pleads the nature of two fraudulent schemes, the time period during which these schemes took place (from at least September 2002 to March 2006, when Plaintiff was employed there[3]), the content of the false claims (either the "irritated" condition or the "Modifier -25" tag[4]), the place (Defendant Bell's main clinic in Murfreesboro or his satellite clinics[5]), and the injury perpetuated by this alleged fraud (submission of fraudulent bills to the federal and state government for payment, which resulted in overpayment to Defendant Bell and damage to Tennessee and the United States[6]). It is not a requirement of the FCA or the Sixth Circuit's interpretation of 9(b) particularity that Plaintiff must name specific individuals in the Complaint. *See Bledsoe II,* 501 F.3d at 506 (stating that "absent from the requirements is the identity of the employee who made the allegedly fraudulent misrepresentation.").

Plaintiff is unable to produce specific detail of any one of these allegedly false

---

[2]     For example, one of the schemes alleged by the *Bledsoe II* plaintiff was that glucometer finger sticks and heel sticks were being billed as "venipunctures" when they could not properly be billed to Medicare and Medicaid. *Id*. at 512. There were no facts alleged to support this false claim except for the fact that the venipunctures were billed with glucometer glucose tests. *Id.* Another scheme alleged was that the defendants inflated cost reports, but the plaintiff offered no facts to support this allegation. *Id.* The *Bledsoe II* court rejected several generalized schemes like this, but they differ significantly from the more specific schemes alleged by Plaintiff in this action.

[3]     The Court acknowledges that the counts purport to make such a claim for the preceding ten years. (Compl. ¶ 28 and others.) The Complaint also notes that Plaintiff worked for Defendants for four years until early 2006. (*Id.* ¶ 4.) Because Plaintiff's employment is the sole source of Plaintiff's personal knowledge of this information, the Court will view the claims in the Complaint as spanning the time period during which she worked for Defendants.

[4]     Compl. ¶¶ 15-18, 21-24.

[5]     Compl. ¶ 5.

[6]     Compl. ¶¶ 18, 24.

claims for two reasons which the Court finds compelling: first, she does not presently have access to the claims submitted because she no longer holds the billing specialist position with Defendants; second, Plaintiff asserts that disclosing information about specific patients would violate HIPAA, and she is likely correct. (Pl.'s Resp. at 12-14.) Because a specific claim could only truly be identified by an individual patient's name, disclosure of any facts relating to that claim, including the patient's name, condition, and procedures completed, would be inappropriate. (*Id*. at 13.) Even if Plaintiff had removed information about these claims while she still worked for Defendants, it would still be violative of HIPAA to disclose it at this time. HIPAA does include a whistleblower provision, but this only covers disclosure by "workforce members" and "business associates." *See* 45 C.F.R. § 164.502(j). The definitions of "workforce" and "business associate" in 45 C.F.R. § 160.103 would likely exclude Plaintiff because she is not a current employee, and she would therefore not qualify as a whistleblower.

Defendants offer no cogent argument to refute Plaintiff's explanation for her failure to provide specifics pursuant to the provisions of HIPAA, instead complaining that the burden is on them to find the evidence to substantiate Plaintiff's deficient pleading and prove her claims. (Def.s' Reply at 3-4.) The Court notes that Plaintiff's burden at this stage is rather low; pursuant to Rule 9(b), Plaintiff must allege enough information to permit Defendants to file a responsive pleading. *SNAPP*, 532 F.3d at 504. Plaintiff is certainly not required to prove her claims at this stage, and Defendants' arguments in that regard are unavailing.

Although Plaintiff does not identify any one particular claim with specific details, the

Court finds this information to be sufficient under a Rule 9(b) analysis.[7]  The Court further

finds that Plaintiff has provided enough detail, as outlined in *SNAPP, Bledsoe II*, and other

Sixth Circuit cases, to permit Defendants to fashion a responsive pleading addressing her

claims.

In addition, the Court notes that "the Sixth Circuit has stated that when considering

complaints that are insufficient to meet Rule 9(b)'s particularity requirements, courts should

be liberal in granting the plaintiff leave to amend his or her complaint."  *United States* ex

rel. *Zeller v. Cleveland Constr., Inc.*, C-1-99-621, 2006 WL 355392, at *4 (S.D. Ohio Feb.

15, 2006) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (stating that

---

[7]      The Court notes that similar allegations of fraudulent schemes have been accepted as
satisfying Rule 9(b) particularity.  *See United States* ex rel. *Pogue v. American
Healthcorp, Inc.*, 977 F. Supp. 1329, 1332-33 (M.D. Tenn. 1997) (stating that "[a]lthough
no specific dates or West Paces employees are identified, the complaint alleges that the
hospital participated in a systematic, fraudulent scheme, spanning the course of twelve
years; this, reference to a time frame and to 'West Paces' generally is sufficient.").

In addition, in *United States* ex rel. *Roby v. Boeing Co.*, 184 F.R.D. 107 (S.D. Ohio 1998),
the court addressed a situation much like the one presented here, where Plaintiff alleges
that every single claim under a particular set of circumstances is false due to Defendants'
reckless disregard for the Medicare certification requirement.  The *Roby* court stated:

> We disagree that Boeing is only able to speculate as to which of
> the hundreds of Speco-manufactured gears presently in service
> is alleged to be nonconforming since the Government's
> Amended Complaint provides . . . that Boeing acted with the
> knowledge of falsity or reckless disregard for the truth with
> respect to every CH-47(D) helicopter it delivered to the United
> States.

*Id.* at 110.  The Court acknowledges that these decisions were prior to *Bledsoe II* and its
requirement that a plaintiff plead a specific claim, but the Court finds that the *Bledsoe II*
court's language regarding the situation it did not reach, the factual situations in these
cases, and Plaintiff's explanations for her inability to disclose specific information,
provides sufficient support for "relaxing" the stated rule.  Indeed, the *Bledsoe II* court
acknowledged that the requirement of pleading a specific claim was intended to foreclose
lawsuits based on "speculation and conclusory allegations," not lawsuits where the relator
has personal knowledge of allegedly fraudulent schemes but does not have access to the
documents and could not plead any one claim with specificity because the evidence was
under the defendant's control.  *Bledsoe II*, 501 F.3d at 504 n. 12.

"despite the plaintiffs' failure to satisfy the requirements of Rule 9(b), in the absence of defendants' motion for more definite statement under Rule 12(e), dismissal on this basis would not be appropriate."). Therefore, the Court concludes that, even if it were to find that Plaintiff's Complaint lacked the necessary degree of particularity, dismissal would not be the appropriate remedy. Finally, the Court notes that it would have to seek consent from the United States before dismissing this action, pursuant to 31 U.S.C. § 3730(b)(1). (Court Doc. 57 at 2.) Under these circumstances, it is clear to the Court that dismissal is not warranted.

Accordingly, the Court concludes that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) is not well taken, and should be **DENIED**.

### B. Amendment of the Complaint

Plaintiff seeks to file a First Amended Complaint to narrow the patterns of fraudulent claims from four to two, reduce the number of counts alleged, and to provide more detail regarding the two patterns of false clams, if the existing detail does not meet Rule 9(b) particularity standards. The Court does not find Defendants' Motion to Dismiss to be well taken and does not find that Plaintiff's amendment is necessary on a Rule 9(b) basis. The Court accepts, however, that Plaintiff seeks to amend the Complaint to add additional detail and narrow the issues to be litigated by removing the two patterns that Plaintiff concedes were not pled with particularity.

The Court must consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party by virtue of allowance of the amendment" in its

decision. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court may also consider whether the amendment will be futile. *Id.* The Court can see no prejudice that would result to Defendants from an amendment that restricts the issues to be litigated and the number of counts asserted; in fact, Defendants should benefit somewhat from this more detailed and narrowed Complaint. There is no bad faith or dilatory motive of Plaintiff that the Court must consider, nor has Plaintiff repeatedly failed to cure deficiencies with other amendments. The amendment is not futile. The Court acknowledges that there has been some delay in seeking leave to amend, but the Court finds that the delay is not necessarily the fault of Plaintiff. There was no urgent reason to amend the Complaint while the United States was deciding whether or not to intervene in the action and, in fact, an amendment might have even prolonged that lengthy process. Instead, the Court views Plaintiff's Motion as a response and partial concession to Defendants' Motion to Dismiss.

Under the circumstances, the Court finds that Plaintiff should be permitted to amend her Complaint. Accordingly, Plaintiff's Motion for Leave to File First Amended Complaint will be **GRANTED**.

### C. Defendants' Motion to Strike

Defendants move to strike the affidavit that Plaintiff filed with her Response to Defendants' Motion to Dismiss. (Court Doc. 73.) Defendants assert that the Court's consideration of the affidavit in the context of a Rule 12(b)(6) motion is improper, as the Court may only consider the pleadings, not additional material or facts, in making its determination. (Court Doc. 75, Def.s' Mot. to Strike at 1-2.)

The Court agrees that reviewing materials outside the pleadings in the context of

a Motion to Dismiss requires the conversion of such a Motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d). The Court has not considered the facts asserted in Plaintiff's affidavit in its consideration of Defendants' Motion to Dismiss. Because the facts outlined in Plaintiff's affidavit were the same facts added to her First Amended Complaint, however, the Court concludes that Defendants' Motion to Strike is essentially moot.

The Court considered Defendants' Motion to Dismiss somewhat contemporaneously with the Motion for Leave to File First Amended Complaint. If the Court's outcome on the Motion to Dismiss had been favorable to Defendants, it still would not have resulted in dismissal of this case because that would not have been the appropriate remedy; rather, the Court would have granted Plaintiff's Motion to Amend her Complaint to provide additional particular facts to satisfy the concerns of Defendants raised in their Motion to Dismiss.

As it stands, the Court has explained its reasons for denying Defendants' Motion to Dismiss, and the Court has granted Plaintiff's Motion for Leave to File First Amended Complaint. The First Amended Complaint contains essentially the same facts as were set forth in the affidavit. Therefore, the Court considers Defendants' Motion to Strike to be largely irrelevant and unnecessary under the circumstances, and the Motion will be **DENIED AS MOOT**.

## IV. CONCLUSION

For the reasons explained about, the Court **ORDERS** that Defendants' Motion to Dismiss [Court Doc. 67] is **DENIED**; Plaintiff's Motion for Leave to File First Amended Complaint [Court Doc. 74] is **GRANTED**, and Defendants' Motion to Strike [Court Doc. 75]

is **DENIED AS MOOT**.

**SO ORDERED** this 12th day of May, 2010.

_/s/Harry S. Mattice, Jr._
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE